[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff wife on March 6, 1997 seeking a dissolution of marriage on the ground of irretrievable breakdown. Additionally, the plaintiff seeks alimony, counsel fees, an equitable distribution of assets, and a restoration of her birth name, Linda Barlow.
On November 12, 1997, the defendant appeared through counsel and on November 26, 1997, he filed and answer and Cross Complaint seeking a dissolution, alimony, an equitable distribution of marital assets and counsel fees. A trial on the Complaint and the Cross Complaint was held on December 18, 1998. Testimony was received from the plaintiff, the defendant, and two real estate appraisers: Theodore Rummel for the plaintiff and Robert Morra for the defendant. From the testimony and evidence produced, and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were intermarried on November 9, 1991 at Stafford, Connecticut. There are no minor children who are issue of this marriage, and no children have been born to the wife since the date of the marriage. Neither party is receiving any state, federal nor local financial assistance. Both parties resided continuously in this state for one year immediately prior to the dates of the Complaint and Cross Complaint. The court finds that it has jurisdiction over the parties and the marriage.
The parties met in 1989 and in that same year began to cohabitate in the defendant's residence located at 54 Conklin Road, Stafford Springs, Connecticut. This house was built in about 1880 and is located on a 2.9 acre lot. The defendant has CT Page 736 been living in this house for 26 years. The plaintiff owned a house in Somers, Connecticut which she sold on October 1991 realizing $20,589.99. (Exhibit A). On October 24, 1991, the plaintiff used a portion of the funds realized from the sale of her house to bring current the mortgages on the defendant's house. (Exhibit B). The defendant was seven months in arrears at the time.
When the parties entered into marriage in November 1991 there were two mortgages on the 54 Conklin Road property totaling about $75,000. (Exhibit B, D, K). On December 31, 1993, the defendant Quit Claimed the deed to the 54 Conklin Road property to himself and to the plaintiff wife (Exhibit 7) in order to be able to use the wife's income and credit to obtain refinancing. A loan in the amount of $73,000 was secured with a new mortgage and the existing mortgages were paid off. (Exhibit D). Also in 1993 the parties renovated the second floor of the residence by removing one of the bedrooms and adding a bathroom. Most of the work was done by the defendant. Whether, and to what extent, the renovations increased or decreased the value of the house cannot be accurately determined from the evidence produced.
During the first two years of marriage the parties enjoyed a good relationship. Both parties were employed and, for the most part, they shared financial responsibilities. The husband was generally responsible for paying the mortgage, taxes and insurance, and the defendant was generally responsible for buying the food and other items necessary to maintain the home.
In November 1993, a barn/garage located on the property was destroyed by fire. The contents within the barn, including motor vehicles and numerous items of personal property, were also destroyed. Both the plaintiff and the defendant testified that he or she owned most of the items destroyed in the fire. The court finds the credibility of both parties to be suspect as to this testimony, and the court is unable to determine who owned what based on the evidence presented. The fact of the matter is that the barn and the items of personal property were destroyed and, because the property was significantly under insured, the parties suffered considerable financial lost. The insurance payment for the loss of the barn and its contents was in excess of $40,000. Those funds were placed in a joint account which was depleted through numerous withdrawals over the years. (Exhibits 10, 11, 12). CT Page 737
Thereafter, the marriage began to deteriorate and in 1994-1995 the defendant became involved with another woman. That relationship continues as of the date of trial. The court finds this relationship to have been a significant factor in the demise of this marriage. At one point the increasing disharmony between the plaintiff and the defendant resulted in a referral to the Family Relations Division of the Superior Court for counseling.
The parties first separated, and the plaintiff moved out of the marital residence for the first time, in January 1995. At that time the plaintiff removed approximately $14,000 from a joint checking account, several thousand dollars of which were spent for furnishings for an apartment. The parties reconciled a few months later at which time the plaintiff moved back into the marital residence. At that time she redeposited $9,300 of the $14,000 she had taken into a savings account.
In January 1997 the parties again separated and the plaintiff again left the marital residence after the defendant agreed to pay the plaintiff $10,000 to move out. The defendant borrowed the $10,000 from his paramour and gave it to the plaintiff. Two days later the defendant asked the plaintiff to return to live with him, and she did. She also gave him back $8,000 of the $10,000 he had just given her. The defendant used the $8,000 and an additional $2,000 that he borrowed from another person to repay the $10,000 loan. A week later the parties separated again and the plaintiff moved from the marital residence for the final time. At that time the defendant told the plaintiff that she could take whatever she wanted, except the curtains. When she left the plaintiff took every item of furniture from the residence, except an old bed and a picnic table. She also took the curtains. There is insufficient evidence to be able to assess the value of the furniture taken by the plaintiff.
The defendant testified that after the last time the plaintiff moved out of the marital residence he was able to borrow $4,000 which he gave to the plaintiff, in cash, as part of the $8,000 that she had returned to him. The plaintiff testified that the defendant offered her $4,000 in cash but she refused to take the money. She stated that she considered it to be a bribe. The court finds the testimony of the defendant to be credible as to this matter. Given the history of this case, especially the multiple exchanges of money between the parties, it is not likely that the plaintiff would refuse $4,000 in cash under these circumstances. CT Page 738
Two qualified real estate appraisers testified as to the fair market value the 54 Conklin Drive property. (Exhibits I and 8). The house is described as containing two bedrooms, two baths, a kitchen, living room and a small room off the kitchen. It does not have central heat. There is a detached combination barn/garage on the property that was rebuilt in 1994. The two appraisals submitted to the court were for $109,000 and $125,000. The court finds the testimony and expert opinion of the defendant's appraiser to be the more credible and therefore finds the fair market value of the property to be $109,000. As of the date of trial the balance of the current mortgage loan on the marital residence was approximately $56,500. (Financial affidavits).
Both the plaintiff and the defendant appear to be in good health and are gainfully employed. The plaintiff is a sales representative and earns approximately $600 per week. The defendant is a construction equipment operator and earns approximately $560 per week.
The plaintiff wife has a modest 401K retirement fund. An accurate, up to date valuation of the account has not been provided to the court; however, cross examination testimony from the wife revealed that the account is worth more than the $6,000 stated in her financial affidavit. Additionally, the wife reports approximately $500 in checking and savings accounts, and ownership of a 1994 Pontiac valued at $5,500. There is a loan balance on the automobile of $1,500.
The husband reports no retirement or pension accounts. He claims to have $100 in a savings account and he owns two older motor vehicles with a combined value of $2,200. The only asset of significance is the marital residence.
After taking into consideration all of the criteria and factors set forth in § 46b-62, § 46b-81 and §46b-82, and applying the same to the evidence, the court enters the following orders.
1. A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the Complaint and Counter Complaint having been proven.[1]
2. This has been a short term marriage. The parties have comparable income, income potential, and financial needs. Neither CT Page 739 party has a financial advantage over the other nor is the current or projected need of either party greater than the other. Consequently, alimony is not awarded to either party.
3. The plaintiff is entitled to share in the increase in the equity of the marital residence achieved during the course of the marriage. After taking into consideration the money previously given to the plaintiff by the defendant, the personal property taken by the plaintiff from the marital residence, as well as the statutory criteria relating to the distribution of marital assets, the court orders defendant to pay to the plaintiff a lump sum property settlement of $10,000 within 45 days of the date of this judgement.
4. Within seven (7) days of receiving said $10,000 payment, the plaintiff shall quit claim her interest in the marital residence located at 54 Conklin Road, Stafford Springs, Connecticut to the defendant. In as much as the defendant owned the 54 Conklin Road property long before he ever met and married the plaintiff, equity requires that he retain sole possession of said property upon dissolution of the marriage. The defendant shall hold the plaintiff harmless for any liabilities and obligations pertaining to said marital residence and he shall remove the plaintiff's name from the mortgage. The court shall maintain jurisdiction over the marital residence until the above orders of the court have been carried out.
5. The plaintiff is awarded sole interest in her retirement fund and the funds in her checking and savings accounts.
6. The plaintiff shall be responsible for the debts and liabilities shown on her financial affidavit, and the plaintiff shall hold harmless the defendant thereon.
7. The defendant shall be responsible for the debts and liabilities shown on his financial affidavit including, but not limited to, all mortgage payments and taxes owed on the marital residence. The defendant shall hold harmless the plaintiff thereon.
8. Each party is assigned all personal property, including the automobiles, currently in his or her possession.
9. Each party shall be responsible for his and her own attorney's fees and costs. The court finds that each party is CT Page 740 capable of paying his and her own attorney fees and neither is in a financial position to pay the attorney's fees of the other.
10. The plaintiff's birth name, Linda Barlow, is restored.
Plaintiff's counsel shall prepare and submit a judgement file within 30 days of the date of this judgement. The court notes that in both the Complaint and the Cross Complaint the date of marriage is stated to be November 9, 1992. Since the testimony of the plaintiff was that the parties were married in 1991, the court assumes the 1992 date to be an error which should be corrected in the judgement file. Both the plaintiff's attorney and the defendant's attorney shall sign the judgement file.
Terence A. Sullivan Superior Court Judge